## McCAIN *v.* DES MOINES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

No. 238. ·Submitted April 5, 1899. — Decided May 1, 1899.

It appearing on the face of the bill in this case that all the parties to this suit are citizens of Iowa, and the court being of opinion that the allega-tion in the bill that this is a controversy and a suit of a civil nature aris-ing under the Constitution and laws of the United States is not only not supported by the facts appearing in the bill, but is so palpably unfounded

that it constitutes not even a color for the jurisdiction of the Circuit Court, the decree below, dismissing the bill for want of jurisdiction, is affirmed.

THE bill in this case is filed against the city of Des Moines, its board of public works, the Des Moines Brick Manufacturing Company, and the incorporated town of Greenwood Park, to obtain an injunction restraining, among other things, the city of Des Moines and its officers and agents from exercising over the territory of the incorporated town of Greenwood Park any function of municipal government for the purpose of taxation or for works of internal improvements or otherwise, and for other relief.

The bill makes the following allegations: The complainants own in severalty lands within the incorporated town of Greenwood Park, and the lands so owned by each of the complainants are worth more than $2000; adjoining the town is the city of Des Moines, a municipal corporation created under the laws of the State of Iowa. In 1890 the legislature passed an act purporting to extend the limits of the city of Des Moines so as to include therein the town above named. The constitution of the State prohibits the passing of special acts for the incorporation of cities; the act of 1890 was a special act incorporating a city and therefore prohibited by the constitution, and as a consequence entirely void. The incorporated town has never been dissolved and is entitled to exercise all the functions of government and taxation, but it has ceased to exercise them over the territory; that notwithstanding the act of 1890 is wholly void and of no effect, the defendant, the city of Des Moines, pretended and undertook to exercise the functions of government and the power of taxation over the territory of Greenwood Park; that the only warrant for the city to act in the premises is the void act of the legislature of 1890, and the city is assuming to levy assessments and to exercise the power of taxation and to perform all the other functions of municipal government under that act; that the suit herein is one of a civil nature arising under the laws and Constitution of the United States; and the sum in controversy

exceeds $2000. It appears on the face of the bill that all the parties are citizens of the State of Iowa.

The bill further alleges that the city made a contract with the defendant, the Des Moines Brick Manufacturing Company, to pave a public highway in the town, the expense of which was to be assessed upon the property abutting thereon, including the lands of the complainants, and the work was all done under color of the act mentioned, and that it was all illegal for want of authority; that at the time of the passage of the act and the taking of jurisdiction by the city, the town was exclusively an agricultural community, and there was no advantage in or necessity for the annexation of the town to the city of Des Moines, and none of the land in the town had been plotted into lots by laying out streets or alleys therein, and the highways within it were under the control and jurisdiction of the officers of Polk County, and that to subject the lands of complainants or the other lands within the town to the taxes and assessments threatened by the city of Des Moines is to take their property under color of authority from the void act of 1890, and contrary to the amendment of the Constitution of the United States, section 1, article 14.

Further allegations were made, not material to be stated.

In addition to asking for an injunction to restrain the city of Des Moines from exercising jurisdiction over the town of Greenwood Park, the complainants ask that the town "be enjoined to exercise for its own future benefit under the statutes of Iowa all functions of municipal government and taxation and works of internal improvement in the same manner and to the same extent as the said functions have been exercised by said defendant prior to March 3, 1890." The bill further prayed that the city and the board of public works should be enjoined from making any levy upon the property of the complainants to pay the expense of paving the highway, and that the city be restrained from issuing to the Des Moines Brick Manufacturing Company any assessment certificates on account of paving, and for other relief.

The defendant, the Des Moines Brick Manufacturing

Company, demurred to the bill on the ground, among others, that it appeared on the face of complainants' bill that all the parties to the suit were citizens of the State of Iowa, and that this suit does not involve any question arising under the Constitution or laws of the United States, and therefore the Circuit Court had no jurisdiction in the case.

The Circuit Court sustained the demurrer on the ground of want of jurisdiction, and pursuant to section 5 of the act of March 3, 1891, organizing the Circuit Courts of Appeals, 26 Stat. 826, it has certified the question of jurisdiction alone for decision by this court.

The opinion of the District Judge, in dismissing the bill, is reported in 84 Fed. Rep. 726.

*Mr. William E. Mason* and *Mr. William G. Clark* for appellants.

*Mr. N. T. Guernsey, Mr. H. T. Granger* and *Mr. Arthur C. Graves* for appellee.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

The jurisdiction of the Circuit Court depends upon the act approved August 13, 1888, 25 Stat. 433, a part of which reads as follows: "That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, . . . arising under the Constitution or laws of the United States. . . ."

As it appears upon the face of the bill that all the parties are citizens of Iowa, the Circuit Court had no jurisdiction on the ground of diverse citizenship.

Is the suit one arising under the Constitution or laws of the United States? As was said in the court below, the material question is whether the exercise of jurisdiction by the city of Des Moines over the territory purporting to be annexed by the act of 1890 is lawful? To answer that question it is

necessary only to refer to the constitution and law of the
State of Iowa.

.The Supreme Court of the State decided in *Iowa* v. *Des
.Moines*, 96 Iowa, 521, that the act of 1890 was void be-
cause it violated the constitutional provision in regard to
special legislation. That was an action of *quo warranto*
brought to test the right of the defendant city to exercise
corporate authority over the added territory under the act of
1890. From the report of the facts in that case it appears
that the city was by that act extended two and a half miles
in each direction from its then present boundary, and it was
provided by the same act that the corporate character of any
annexed territory within the extended boundaries should
cease and determine upon the passage of the act. Other
sections of the act provided for the payment of the indebted-
ness of the city so enlarged and of the indebtedness of the
cities within the annexed territory, and for the exemption
from taxation for any city purpose of lands included within
the extended limits which had not been laid off into lots of
ten acres or less, or which should not subsequently be divided
into parcels of ten acres or less by the extension of streets
and alleys or otherwise, and also of lands occupied and used
in good faith for agricultural or horticultural purposes; for
the reorganization of the wards of the cities and for elections
therein. It appeared from the census of 1885 that only the
city of Des Moines was affected by the act of 1890, and that
in the added territory were one city and seven incorporated
towns. The provisions of the act by which the municipal
governments, other than the city of Des Moines, were to
become extinct, and the entire territory to become one corpo-
ration and municipality were observed, so that in April, 1890,
the change was complete, since which time the city of Des
Moines has been thus constituted and has exercised through-
out the territory the rights and functions of a city govern-
ment, including the levy and collection of taxes, establishing,
opening, vacating, changing and improving streets, the mak-
ing of contracts and the creating and payment of debts.

These details, while appearing in the report in 96 Iowa, are

not set up in the complainants' bill, but their substance is shown in the allegations therein made, that the town has ceased to exercise all the functions of government and taxation, and the city of Des Moines and the board of public works are themselves exercising the functions of government over the town territory.

After the court in the *quo warranto* case had determined that the act was local legislation, and of that class prohibited by the Constitution, and therefore void, the opinion therein continues as follows:

"It is next to be determined whether or not, with the law giving rise to the annexation absolutely void, the legality of the present city organization can be sustained under the rule of estoppel or laches. On this branch of the case a large number of authorities have been cited, and the newness of the question, as well as the great interests involved, make it one of great importance. The foundation for the application of the doctrine of estoppel is the consequence to result from a judgment denying to the city of Des Moines municipal authority over the territory annexed, after the lapse of four years, during which time such authority has been exercised, and the changed conditions involving extensive public and private interests. It will be remembered that the act of annexation resulted in the abandonment of eight municipal governments, which before the annexation were independent, and bringing them under the single government of the city of Des Moines. This involved a vacation of all offices in the city and towns annexed, and the delivery of all public records and property to the officers chosen for the city so enlarged. For four years taxes have been levied, collected and expended under the new conditions; public improvements have been made, including some miles of street curbing, paving and sewerage, for which certificates and warrants have been issued, and contracts are now outstanding for such improvements. In brief, with the statement that for the four years the entire machinery of city government has been in operation, the situation may be better imagined than expressed. It is hardly possible to contemplate the situation to result from

a judgment dissolving the present city organization, and leaving the territory formerly embraced within corporate lines as it would be left. Of all the cases to which we are cited, involving the validity of municipal organizations, where the consequences to result from a judgment of avoidance are considered, not one presents a case of such uncertainty, nor where there are the same grounds for serious apprehension, because of difficulties in adjusting rights in this case."

The court then cited several cases in which the doctrine of laches had been applied to sustain a municipal government where the organization, as attempted, was illegal. See *State* v. *Leatherman*, 38 Arkansas, 81; *Jameson* v. *People*, 16 Illinois, 257; *People* v. *Maynard*, 15 Michigan, 463; and also the following from Cooley on Constitutional Limitations, (page 312, 4th ed.):

"In proceedings where the question of whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the State as such. . . . And the rule, we apprehend, would be no different, if the constitution itself prescribed the manner of incorporation. Even in such a case, proof that the corporation was acting as such, under legislative action, would be sufficient evidence of right, except as against the State, and private parties could not enter any question of regularity. And the State itself may justly be precluded, on principles of estoppel, from raising any such objection, where there has been long acquiescence and recognition."

Continuing with its own opinion, the court stated:

"This, it is true, is a direct proceeding by the State. And, while the language used is applied in part to collateral proceedings, it seems also to include actions by the State directly. The learned writer sustains this text by a reference to *People* v. *Maynard*, (*supra*,) *Rumsey* v. *People*, 19 N. Y. 41, and *Lanning* v. *Carpenter*, 20 N. Y. 447. It will be seen that importance is given to the fact that the defective organization takes place under color of law. Nothing less can be said of the annexation in this case than that it was made under color

of law. 'Color of law' does not mean actual law. 'Color,' as a modifier, in legal parlance, means 'appearance as distinguished from reality.' Color of law means 'mere semblance of legal right.' Kin. Law Dict. & Gloss. In some of the cases the defects as to organization have been spoken of as irregularities, because of which appellant thinks the cases not applicable, because this is a void proceeding. The term 'irregularity' is oftener applied to forms or rules of procedure in practice than to a non-observance of the law in other ways, but it has application to both. It is defined as a 'violation or non-observance of established rules and practices.' The annexation in question was a legal right under the law, independent of the act held void. It was not a void thing, as if prohibited by law. The most that can be said is that the proceeding for annexation was not the one prescribed, but it was a violation or non-observance of that rule or law. It seems to us that the proceeding is no less an irregularity than in the cases cited."

And again on page 536, in speaking of the invalidity of the act of 1890, the court said:

"Had the act never been passed, and the same method for annexation been adopted, with the same conditions as to recognition, acquiescence, delays and public and private interests involved, the same conclusion would result; and hence the act is without the least significance, nor have we given it a shadow of bearing, except in so far as it may have served as a color of law inducing the proceedings for annexation."

And lastly, in speaking of the consequences to be apprehended from a judgment of ouster, the learned court said (p. 538):

"Such a judgment would disrupt the present peaceful and satisfactory arrangement of all the people of the city, as to its corporate existence, without a benefit, so far as we know, to any person. The law does not demand such a sacrifice for merely technical reasons. In fact, the constitutional vindication is complete with the declaration that the act is absolutely void."

It will thus be seen that while the Supreme Court of Iowa decided that the act purporting to extend the limits of the city was void as being in violation of the constitutional pro-

vision in regard to special and local legislation, yet the court also·held, for the reasons stated, that it was sufficient in itself to constitute, under the circumstances mentioned, a color of law for the annexation, and for the application of the principles of estoppel as above mentioned. The legality of the present city organization was for those reasons sustained. It is this same organization that the complainants now ask to have enjoined in this suit from exercising any function of government in the annexed district, and the former organization in the annexed district which the complainants allege has ceased to exercise those functions, they now ask the court in this suit to enjoin it "to exercise for its own future benefits under the statutes of Iowa."

To grant the relief demanded would quite effectually overrule the decision of the state court upon a question relating purely to the local law of the State.

The claim of the complainants is based solely and wholly upon the allegation that the act of 1890 was void as in violation of the constitution of Iowa. Their counsel lay that down in so many words in their brief. They say that their claim is " that under a law declared to be void and unconstitutional by the Supreme Court of the State of Iowa, the city of Des Moines is still exercising municipal control and jurisdiction over the complainants' property." There is an allegation in the bill that the land of the town was agricultural, but it is not asserted that the act was a violation of the Federal Constitution because it included such lands. No such question is made by the bill. .

In their brief counsel urge that the act was void because among other things it was a violation of the constitution of Iowa in bringing agricultural lands, under the circumstances and to the extent mentioned, into the control and limits of the city. The act itself in the third section exempts such lands from taxation for any city purpose, when they shall in good faith be occupied and used for agricultural or horticultural purposes.

It is therefore quite plain that the complainants base their case upon the allegation that their property is about to be

taken from them by the city authorities without due process of law and in violation of the Constitution of the United States, because the act of 1890 violates the constitution of Iowa. That is a question of law, depending for its solution upon the law of Iowa, and as to what that law is the Federal courts are bound in such a case as this by the decision of the state tribunal. There is no construction of the Federal Constitution involved in that inquiry, nor any question as to its effect upon the complainants' rights in this suit. The question whether their property is taken without due process of law must be decided with sole reference to the law of Iowa. How can it be said upon such facts that any question arises under the Constitution or laws of the United States? The claim of the complainants will not be defeated by one construction of that clause in the Constitution or sanctioned by the other. *Starin* v. *New York*, 115 U. S. 248. There is no dispute about construction in any way whatever; the only question is as to the validity of the city organization, which, as stated, is a matter of state law.

The case is, however, made still stronger by the fact that the validity of the present organization of the city government and the lawfulness of its exercise of jurisdiction over the territory mentioned has been already decided by the state court, and had been so decided when this suit was commenced. It is not important upon what ground the state court proceeded in arriving at its judgment, whether it was because the act of 1890 was valid, or that being invalid, the lawfulness of the organization could not be inquired into for the reasons stated in the opinion of the court above quoted. The complainants however argue that the state Supreme Court in the *quo warranto* case did not decide upon the validity of the city organization, but only that the relator, being a non-resident of the city and paying taxes in the town in the nominal sum of a dollar a year, would not be heard upon a question which might disturb the peaceful relations that existed in the territory, and which might also overturn the municipal authority of the city of Des Moines therein. Counsel allege that these complainants do not attempt to test the corporate existence

of the city of Des Moines, but simply to test the right of that corporation to levy taxes for certain purposes upon the property of the complainants.

The last assertion, so far as concerns the testing of the corporate existence of the city in the territory mentioned, is clearly an error, because the bill asks relief in the way of a perpetual injunction to restrain the city of Des Moines, its officers and agents, from the exercise of any function of municipal government or authority or jurisdiction for the purpose of taxation or for works of internal improvement in the town of Greenwood Park, and it asks that the city officers be perpetually restrained from interfering with the officers of the town or from obstructing them in the administration of the municipal affairs of the town; and that the town "be authorized and enjoined to exercise for its own future benefits under the statutes of the State of Iowa all functions of municipal government, taxation and works of internal improvement, in the same manner and to the same extent as the said functions have been exercised by defendant prior to the 3d day of March, 1890." This prayer for relief seeks to test pretty substantially the corporate existence of the city of Des Moines in the territory in question. It does, of course, also seek to test the right of the corporation to levy taxes for the purposes named in the bill and upon the property of the complainants; but the right to levy these taxes depends entirely upon the legality of the city organization, so that if the organization is not lawful, the taxation is equally invalid.

The commencement of this suit is plainly an attempt to overturn the decision of the state court in the *quo warranto* case. In our opinion the complainants take much too narrow a view of the decision of the state court in that case. The facts of the non-residence of the relator and the smallness of his interest were spoken of, but they formed only an insignificant part of other and more important facts upon which the reasoning of the court was based. Those other facts were of a public nature, and the court, in its opinion, gave great weight to the public interests that were involved and the great injury that would fall upon all public as well as private

interests by overturning an authority that had lasted four years, and which had been initiated under color and by reason of an act of the legislature. The court in truth decided that the legality of the city organization could not be inquired into, even in a direct proceeding brought by the State to test the validity of the act, or, in other words, the validity must be sustained for the following, among other, stated reasons : The lapse of time; the actions of the authorities of both city and town in taking and yielding possession and jurisdiction; the delivery of all public records and the closing of all public offices by the officers in all the abandoned municipal governments; the levying, collection and expenditure of taxes; the public improvements made after the passage of the act; the bonds that had been recalled by the city and others issued in their place; the general recognition of the validity of the municipal government by all classes of the community; the color of law under which the organization of the city government had been practically effected in the territory; and the inextricable confusion into which the whole affairs of the city and town would be thrown as the necessary result of holding that the city government did not extend over the territory mentioned. For these public considerations the court refused to permit the inquiry to be made, even by the State, into the validity of the municipal government of the city as enlarged under color of the act of 1890. That no collateral inquiry would be permitted the opinion takes as unquestionably plain.

For the purpose probably of meeting the argument arising from acquiescence, as set forth in the *quo warranto* case, the complainants allege in the bill herein that they and the citizens of Greenwood Park have not assented to or acquiesced in or agreed to the acts of the city of Des Moines, and that jurisdiction has been exercised over them without their consent, and without permitting the citizens by election or otherwise to determine whether the pretended acts of annexation should be operative or not. These allegations would seem to refer to the state of mind which the complainants and citizens were in during these many years, and the allegation of an absence of

acquiescence would also seem to have been founded upon the fact that there had been no election by which to determine whether the act should be accepted or not.   Neither fact alters the effect to be properly given the opinion in the case mentioned, in the face of the facts actually existing.   From the time of the passage of the annexation act up to the commencement of this suit, a period of seven years, there is no allegation of any act on the part of the complainants or any other citizen in the way of an attempt to test the validity of this legislation with the exception of the suit brought by the State upon the relation of a non-resident property owner who paid taxes in the amount of one dollar a year.   Otherwise than as above stated there is no allegation tending to show dissatisfaction with the legislation prior to September, 1897, when the brick company defendant entered upon the work which led to the assessment in dispute in this suit.   During these years the city authorities have, as the bill alleges, performed all the functions of government in the territory, and taxes have been imposed and collected (presumably from complainants among others), improvements commenced and continued, interest on bonds paid, and no action taken by any one to prevent these measures or to test their validity.   What may have been the secret thoughts of the complainants or other citizens during all this time must be matter wholly immaterial, so long as there was such acquiescence on the part of the public authorities as has been stated in the opinion of the court in the *quo warranto* case, and such as substantially appears by the allegations of the bill in this suit.   The particular allegations of non-acquiescence by the complainants do not detract from the strength of the principles laid down by the state court, nor do they in any degree affect the full applicability of those principles to the facts set up in the bill in this suit.   The action of the State against the city of Des Moines has been the only thing done towards making any attempt to test the question of the validity of the legislation prior to the commencement of this suit. In this suit we are bound to take the law of Iowa as it has been decided to be in the *quo warranto* case.   In that case it has been deliberately decided that the validity of the organi-

zation of the municipal government in the whole territory in which it has been in practical operation for so long a time cannot be the subject of judicial inquiry by any one at this late day. Such being the law of Iowa, we are of opinion that an allegation in the bill that this is a controversy and a suit of a civil nature arising under the Constitution and laws of the United States, is not supported by the facts appearing in the bill. The facts alleged must show the nature of the suit, and it must plainly appear that it arises under the Constitution or laws of the United States; that is, there must be a real and substantial dispute as to the effect or construction of the Constitution or of some law of the United States, upon the determination of which the recovery depends. *Shreveport* v. *Cole,* 129 U. S. 36; *New Orleans* v. *Benjamin,* 153 U. S. 411.

Taking the law of Iowa to be as decided in the case mentioned, it appears that the validity of the city government has been sustained by the state court, and in that event there is not a shadow of a Federal question in this suit, for if the city government be valid, the regularity and validity of the proposed assessment necessarily follow, and there cannot be even a pretence that the collection of the assessment would be without due process of law.

The allegation that the suit arises under the Constitution of the United States is so palpably unfounded that it constitutes not even a color for the jurisdiction of the Circuit Court. That court was therefore right in dismissing the bill, and its decree must be

*Affirmed.*