### GUNDALL et al. v. MANHATTAN RY. CO. et al.

(District Court, S. D. New York. May 21, 1913.)

1. COURTS (§ 280*) — FEDERAL COURTS — JURISDICTIONAL QUESTION — DETERMINATION.

Since every court should be as jealous of any unwarrantable enlargement of jurisdiction as of an attack on its lawful powers, a federal court will sua sponte determine a question of its own jurisdiction, though not raised by counsel for either party.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. § 280.*]

2. COURTS (§ 282*)—FEDERAL COURTS—JURISDICTION—CONSTITUTIONAL QUESTION.

The Court of Appeals of New York having for a long period sustained actions by property owners for injuries sustained by the construction of an elevated railroad in the street in front of their premises, and held that the right of action for such damages could not be tolled by prescriptive title, initiated by or resting on an original entry on such easements in subordination to the abutting owner, and having afterwards overturned such rule, and held that persons before whose premises such railroads had been in operation for more than 20 years without having sued were deprived by prescription of any right to recover for fee depreciation and rental loss, an allegation that such latter holding constituted an unconstitutional deprivation of the landowner's property rights was insufficient to confer jurisdiction on a federal District Court of such a case arising between citizens of the same state, on the theory that the case was one arising under the Constitution of the United States, since it could not be said that the state courts would again follow the later decisions in case plaintiff's suit was presented to them, or, if they did, that the decision would be sustained on a writ of error to the Supreme Court of the United States.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*]

In Equity. Bill by Rosa Gundall, individually and as administratrix, and others, against the Manhattan Railway Company and others. On final hearing. Bill dismissed.

All parties to this bill are citizens of New York, and the sole ground of jurisdiction asserted is that the case is one arising under the Constitution of the United States. Complainants have succeeded to the title of Daniel Gundall, deceased, in certain premises on Second avenue, in this city. Gundall bought eight years after the Manhattan Railway Company began to operate the Second Avenue Elevated Railway.

It is asserted (and may be admitted for purposes of argument) that the existence and operation of the elevated road conferred upon the owner of

said premises a good cause of action for depreciation of fee value and loss of rental, of the kind long familiar to the courts of the state sitting in this city. Neither Gundall nor these complainants ever brought such suit in the state courts. This action (begun July 21, 1909) is the first assertion of any cause of action against the elevated roads by these complainants or their predecessor in title. The reasons actuating suit in the United States court may be thus stated:

(1) In 1888, when Gundall purchased this property, it was the settled law of the state that abutting owners were entitled to damages for the appropriation of easements by elevated railroads erected in and on the streets.

(2) It was also then such law that the right of action for such damages could not be tolled by prescriptive title, initiated by or resting on an original entry on said easements in subordination to the abutting owner.

(3) It was likewise then such law that the building and operation of the elevated railway in Second avenue constituted an entry upon the easements of abutting owners, in subordination as aforesaid.

(4) Long subsequently, and in or about June, 1906, the Court of Appeals of New York in the case of Hindley v. Manhattan Ry. et al., 185 N. Y. 335, 78 N. E. 276, overturned the settled law aforesaid, and held in substance that persons before whose premises the elevated roads had been in operation for more than 20 years without suit brought were deprived by prescription of any right of recovery for fee depreciation and rental loss.

(5) Easements of light, air, and access were and are property, and the decision in the Hindley Case in effect deprived complainants (among others) of such property without compensation by reversing the settled law of New York (as evidenced by previous decisions of the same court), under which law no prescriptive title to said easements could be acquired under the circumstances shown in the Hindley Case and by the evidence herein.

Complainants, being advised in 1909 that they would certainly be defeated in the state courts, solely because the Second Avenue Elevated Railway had then been in operation before their premises for nearly 29 years, brought this action. Counsel now assert "the only redress open to complainants was by suit in equity in this court."

Vincent P. Donihee, of New York City, and Joseph W. Bailey, of Washington, D. C., for complainants.

J. Osgood Nichols, of New York City, for defendants.

HOUGH, District Judge (after stating the facts as above). [1] When novel litigation is presented the first question is that of jurisdiction, a question which remains pertinent in all appellate tribunals and one to be decided whether dwelt upon by counsel or not. It is the duty of every court to be as jealous of any unwarrantable enlargement of jurisdiction as of an attack upon its lawful powers.

[2] That this case is novel is admitted; it being an attempt to transfer to the United States courts sitting in New York City a class of litigation of which the state tribunals have hitherto enjoyed an unenvied monopoly. The avowed legal basis of suit is the doctrine of Gelpcke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520, as applied in Muhlker v. Harlem R. R., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872, and the proposed method of application is exactly stated in the dissenting opinion of Holmes, J. (197 U. S. at page 573, 25 Sup. Ct. at page 529, 49 L. Ed. 872), where he said:

"I ask myself what has happened to cut down the power of the * * * courts [of New York] as against [the] Constitution [of the United States] at the present day. So far as I know the only thing which has happened is that they have decided the elevated railroad cases, to which I have referred. It is on that ground alone that we are asked to review the deci-

sions of the Court of Appeals upon what otherwise would be purely a matter of local law. In other words, we are asked to extend to the present case the principle of Gelpcke v. Dubuque, supra."

It is true that the action against which Justice Holmes protested was taken by a majority of the court, but it does not necessarily follow that what can be done by the Supreme Court of the United States upon appeal duly taken from a state tribunal can also in substance and effect be done by a national trial court. Yet that is what complainants ask—and herein lies the novelty of the present application. The complainants were presumably advised (1) that if they sued in the state courts they would be beaten on the authority of the Hindley Case, supra; and also (2) that if, when so beaten, they appealed to the Supreme Court of the United States, they would there procure relief. They certainly brought this suit, and pray a decree in favor of citizens of New York, declaring in effect that the judgment in the Hindley Case amounts to an unconstitutional infringement of the rights of parties who never appealed therefrom, as well as of all other persons (including these complainants) similarly situated.

The political consequences of such a doctrine are both amazing and alarming, and are not to be accepted unless acceptance is compelled by decisions of the highest authority. Let it be assumed (but not decided) that the Hindley decision does constitute an unlawful invasion of the rights of certain property owners; then the institution of this suit is an assumption that the Court of Appeals having (of course inadvertently) made an unconstitutional decision, will never retract the same nor correct its own error. Such an assumption as this is wholly unwarranted, for, as has been often said, state courts are not only competent to consider federal or constitutional questions, but it is their duty to do so. Missouri Pacific Ry. v. Fitzgerald, 160 U. S. 583, 16 Sup. Ct. 389, 40 L. Ed. 536.

In short, these complainants do not present a case arising under the Constitution of the United States, because they have not been, and non constat they never will be, injured. They have never presented their rights to the courts of New York; if they had done so, it might well be that upon due argument of their constitutional claim it would have been allowed by the state tribunals. Nor can it be assumed that the defendants if sued in the state courts would have set up the defense of prescription.

Constitutional questions do not "arise" in the statutory sense when injury can result only from a defendant's pleading in a certain way in a suit never brought and a court's making a certain decision on a point never presented. The fact that the decision in the Hindley Case does not necessarily deprive these complainants of any rights is enough to produce great similarity between this litigation and Shreveport v. Cole, 129 U. S. 36, 9 Sup. Ct. 210, 32 L. Ed. 589. The political considerations above referred to are suggestive of the situation which produced a denial of jurisdiction in McCain v. Des Moines, 174 U. S. 168, 19 Sup. Ct. 644, 43 L. Ed. 936.

Finally, let it be admitted that if jurisdiction here rested on diverse citizenship, and the constitutional questions were incidentally raised, it

would be the duty of this court to differ from the decision in the Hindley Case on constitutional grounds alone. (Gelpcke v. Dubuque, supra, a case which began in the United States Circuit Court for the District of Iowa.) But when these complainants leave their natural forum and hang jurisdiction in this court upon the proposition that the state courts are sure to go constitutionally wrong, they bring themselves within Defiance Water Co. v. Defiance, 191 U. S. 193, 24 Sup. Ct. 67, 48 L. Ed. 140, where Fuller, C. J., said:

"The proposition is wholly untenable that, before the state courts in which a case is properly pending can proceed to adjudication in the regular and orderly administration of justice, the courts of the United States can be called on to interpose on the ground that the state courts might so decide as to render their final action unconstitutional."

This I consider conclusive, for though the Supreme Court did hold that what complainants objected to was not necessarily unconstitutional, it also denied jurisdiction in the Circuit Court, even assuming unconstitutionality. In the Defiance Case jurisdiction was asserted because a certain temporary injunction might be made perpetual by the state court issuing it. If no jurisdiction existed there, though if something were done in a pending suit, the result would be unconstitutional; a fortiori, it is not enough to confer jurisdiction here to assert that if complainants had sued in a state tribunal they would have been defeated on the authority of an erroneous decision in another case.

Since the bill must be dismissed for lack of jurisdiction, the decree will not carry costs. Defiance Water Co. v. Defiance, supra; Citizens' Bank v. Cannon, 164 U. S. at page 324, 17 Sup. Ct. 89, 41 L. Ed. 451.