## TONCRAY v. CITY OF PHŒNIX, ARIZ.

No. 6312.

Circuit Court of Appeals, Ninth Circuit.

Feb. 24, 1931.

John W. Ray, of Phoenix, Ariz., for appellant.

Charles A. Carson, Jr., and Kibbey, Bennett, Gust, Smith & Rosenfeld, all of Phoenix, Ariz., for appellee.

Before RUDKIN and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

Appellant brought this action in equity to restrain the city of Phoenix, a municipal corporation, its employees and servants, from letting a contract for a proposed street improvement under a resolution of intention theretofore enacted by the city commission, the legislative body of said city, upon the ground that the property of the plaintiff will be thereby taken without due process of law and in violation of the Fourteenth Amendment of the Federal Constitution. The jurisdiction of the federal courts is invoked solely on the ground that the proceedings under attack and under the circumstances alleged in the complaint violate the Fourteenth Amendment of the Constitution; there is no diversity of citizenship. Proceedings were instituted by the city commissioners of the city of Phoenix under the provisions of article 16, section 511 et seq., of the Revised Code of Arizona of 1928. This statute follows in a general way the method of procedure usually outlined by statutes for the assessment of the cost of street improvements in a district to be ascertained and defined by a local board, the assessment to be apportioned upon the property in accordance with the benefits received by each piece or parcel of property within the assessment district. The theory upon which such assessments are levied is that the lot assessed for the cost of such improvement is benefited thereby to the extent of the assessment. Plaintiff alleged that the value of his property within the assessment district and fronting upon the streets to be improved by paving, sidewalking, etc., is of the reasonable value of $2,945; that the probable cost to be assessed to the plaintiff's

lot under the usual method of assessment followed by the street superintendent will be $3,078.96; and that the street superintendent, at the request of the plaintiff, has furnished the plaintiff an estimate of that amount as the probable amount of the assessment upon plaintiff's lot, and plaintiff alleges with reference to said $3,078.96 that it "is very much more than the total value of plaintiff's property, and that if he be required to pay that sum, or it be assessed against his said property, the said action will be a taking of his property without due process of law and a taking of his property without compensation, and violative of his rights under the Constitution of the United States, particularly the Fourteenth Amendment."

The appellant presents his case to this court upon the theory that inasmuch as the assessment upon his lot exceeds the present value of the lot, the assessment necessarily involved the taking of the property without compensation. There is no allegation in the complaint as to the value of the property after the streets have been improved, and we are asked to assume, as plaintiff has done, that the improvements will not benefit his property although he alleges that his lot is a corner lot fronting 150 feet on Jefferson street, one of the streets to be improved, and fronting 140 feet on Sixteenth street, another of the streets to be improved. The mere fact that the assessment for the street improvement exceeds the present value of the land is entirely beside the question.

The law under which the proceedings in question were instituted provides that the district to be benefited shall be determined in the first instance by the local legislative body, the commission of the city (section 512, Ariz. Code, supra), that notice thereof shall be given by resolution, that property holders may file objection thereto, and if the owners of a majority of the frontage of the property contained within the limits of the assessment district file a written protest against the improvement such protest should bar any further proceedings. It is also provided that objections to the extent of the district may be made by an owner in the assessment district within fifteen days after the date of the last publication of the resolution of intention, etc., and that the legislative body of the municipality shall fix a time for hearing such protest, notice thereof shall be given to the protestant of the date of hearing at least ten days prior to the hearing; at the hearing the legislative body shall pass upon the objections and its decision shall be final and con-

clusive. At that hearing it may modify the extent of the proposed assessment district. Thus, each property holder is given an opportunity to be heard upon the question as to whether or not his property will be benefited by the proposed improvement and also upon the question of whether the district as a whole is too small or too large. That is to say, whether the district includes all of the property that is benefited by the improvement. It is further provided by the statute that the assessment of the cost of the improvement shall be apportioned upon the property within the district in accordance with the benefits to the several pieces of property. The assessment thus made by the superintendent of streets is presented to the commissioners of the city and notice is given to the property holders of a hearing thereon and at the time and place fixed in said notice the commissioners have power to correct any errors made in the assessment. Any property holder dissatisfied with the assessment may file written objection thereto, which objection shall be considered by the commissioners at the time of the hearing (section 526, Id.). It is provided that: "The decision of the legislative body shall be final and conclusive upon all persons entitled to object as to all errors, informalities, and irregularities which said legislative body might have remedied or avoided at any time during the progress of the proceedings. * * * It may modify the amounts of the several assessments after hearing, and may in its discretion order a new assessment to be made."

From the time of the making of the assessment and the recording of the same it is a lien upon the property assessed. This lien is to be collected by an action to foreclose the lien in a suit to be brought at any time within two years after thirty-five days from the date of the warrant (section 527). It is provided therein, that the "warrant, assessment and diagram, with the affidavit of demand and non-payment, shall be prima facie evidence of the regularity and correctness of the assessment, and of the prior proceedings and acts of the superintendent and legislative body, upon which said warrant, assessment and diagram are based, and like evidence of the right of the plaintiff to recover."

The statute also provides for an alternate method of collection in the event that the commissioners decide to issue bonds as evidence of the amount of the lien upon each lot, such bonds to be payable in ten installments (Id., § 534 et seq.). When such bond is issued the assessment is collectable in case

of default by a sale of the property after due notice in the manner in which sales for taxes are usually made, as specified in the statute. The property·holder, however, can prevent the issuance of such a bond by notice to the superintendent of streets. He thus preserves all the defenses to the assessments which he would have in a suit to foreclose the lien and in that event the only method of collecting the tax is by suit instituted as provided in section 527, supra. The statute provides that "omission to file such notice shall bar any defense against said bonds except that the legislative body did not have jurisdiction to issue the same" (Id., § 535). We refer to these provisions of the law with reference to a sale in case bonds are issued because of the assertion at the time of the argument that the plaintiff's property is liable to be thus sold, but there is no allegation in the complaint as to the determination by the city commissioners in their resolution of intention such as required by law, and therefore no basis for the assertion. We call attention to the fact that in either event a property owner desiring to contest the assessment · upon constitutional or other grounds can do so in the suit brought for the foreclosure of the lien. Furthermore, it should be noted that under the laws of Arizona, in the event that the contractor delays bringing of the suit to enforce the assessment, the property holder, without waiting for the institution of the suit, can bring a suit to quiet title. Section 4357; Spring St. Co. v. City of Los Angeles, 170 Cal. 24, 148 P. 217, L. R. A. 1918E, 197. This has been the rule in California, from which state the street improvement law of Arizona was taken. These remedies afforded by the law of the state are plain and unambiguous and preclude the institution of an action in the federal court where such action is based upon the sole ground that the plaintiff is deprived of his property by the state without due process of law.

It has been held in proceedings of this nature, where the taxing district is fixed by some authority to which the power has been delegated by the Legislature, that it is essential to due process of law that the landowner be accorded opportunity to be heard on the question of benefits. Embree v. K. C. & Liberty Blvd. Road Dist., 240 U. S. 242, 36 S. Ct. 317, 60 L. Ed. 624. The decision of the board upon a hearing of the question of benefits is conclusive on the property owner so far as the requirements of due process of law are concerned, unless the decision of the board is made fraudulently or in bad faith.

Embree v. Kansas City, etc., supra; Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112, 167, 174, 175, 17 S. Ct. 56, 41 L. Ed. 369. In this connection the appellant alleges that he did "within the time fixed file a protest as to the size and extent of the improvement district and on the date and day set for the hearing on said protest he was present by representative to be heard on the question as to the extent and size of the assessment district, but a hearing on that matter was denied him and his representative; that there was a hearing on the matter of protest as to the improvement, which to be effective must be by a majority of the district frontage and that protest was denied, but that on the matter of the extent of the district a hearing was denied absolutely, and in this the plaintiff was denied due process of law provided by the state legislation, if the same be applicable at all, by which action his rights under the Constitution of the United States was violated, especially that under the Fourteenth Amendment."

Assuming for a moment that this was the place and the only place afforded by the state law for a presentation of the question as to whether or not plaintiff's property was benefited at all, plaintiff does not indicate the nature of his protest, nor is the mere general allegation that he is denied a hearing on a matter sufficient where it is clear 'from the pleading that the property of the appellant fronted upon the proposed improvements and that in the very nature of the thing his property would be benefited by the improvement of the streets adjacent to his property where he does not disclose in his pleading what was done or said at the time and place in question. It may be that the commissioners concluded that the petition was insufficient on its face, and therefore declined to "hear" plaintiff's representative. If the protest was presented and ruled upon there was a hearing which certainly cannot be attacked in the federal courts as violating the Federal Constitution without more specific allegations. Such allegations must be sufficient to charge fraud and bad faith. In the absence of such allegations the complaint is insufficient in that regard. The law of the state provides for a hearing, upon the extent of the benefit derived by plaintiff's property. by reason of the improvement, after the assessment has been made. This action was begun before a contract for the performance of the street improvement work had been executed, and before assessment had been made by the superintendent of streets. The tentative estimate by the superintendent of streets is

not a sufficient basis for this action where the state law provides for formal assessment by him in accordance with the benefits and an appeal to the city commissioners upon that question after due notice and hearing thereon. Where the state law provides for an opportunity to be heard upon the question of benefits to the lot in question, a property holder cannot invoke the jurisdiction of the federal court solely upon the ground of the want of due process of law without first taking advantage of the opportunity accorded to him by the laws of the state to rectify the injustice of which he complains. Farncomb v. Denver, 252 U. S. 7, 11, 40 S. Ct. 271, 64 L. Ed. 424; Apts. Bldg. Co. v. Smiley (C. C. A.) 32 F.(2d) 142; First Natl. Bk. v. Board of County Commissioners, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784.

Several points raised by the appellant on this appeal are not available to him in an action of this sort as they involve certain alleged departures from the procedure required by state law. These are not federal questions. McCain v. Des Moines, 174 U. S. 168, 176, 19 S. Ct. 644, 43 L. Ed. 936; Barney v. City of New York, 193 U. S. 437, 24 S. Ct. 502, 48 L. Ed. 737; San Francisco v. United R. R. (C. C. A.) 190 F. 507, 509; Palestine Tel. Co. v. Palestine (D. C.) 1 F.(2d) 349. It is unnecessary, therefore, for us to consider the question of whether or not under the Constitution of the State of Arizona it is necessary for the property owners in the district to vote upon the assessment; nor whether or not the state Legislature has power to enact legislation controlling the city of Phoenix on the subject of street improvements, in view of the fact that it has a city charter; nor whether or not the resolution ordering the street work to be done must be published; nor the provisions of the state law under which certain engineering and inspection costs with relation to the improvement are directed to be assessed upon the property.

The decree of dismissal was proper and is affirmed.