**WILLIAMS et al. v. UNITED STATES.**

No. 12906.

United States Court of Appeals
Fifth Circuit.

Jan. 10, 1950.

See also 179 F.2d 656.

John D. Marsh, Miami, Fla., A. C. Dressler, Miami, Fla., for appellants.

Leo Meltzer, Sp. Asst. to Atty. Gen., Herbert S. Phillips, U. S. Atty., Tampa, Fla., Fred Botts, Asst. U. S. Atty., Miami, Fla., for appellee.

Before HOLMES, WALLER and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal from a conviction and sentences to penitentiary imprisonment and fine under Criminal Code, Sec. 19, 18 U.S.C.A. § 51, 1926 Ed. [now § 241], for conspiracy to deprive of rights secured by the Constitution and laws of the United States, presents novel, interesting and important questions. Those principally argued are: Does the indictment charge a crime? Does Section 19 as here applied afford legislative due process in defining the crime? Did the charge of the court rightly present the essentials of the crime in refusing to charge that "wilfulness" was an essential? Was a former acquittal of substantive offenses involving the same transactions an adjudication that the acts there charged were not done or counselled, aided or abetted by appellants? Was there error in refusing a mistrial because of newspaper publications during the trial? Was due process denied by the institution of an oppressive prosecution for perjury in the former trial, which intimidated appellants from testifying in this trial? Motions for acquittal were also made by each appellant and overruled.

Very briefly stated the main facts and the course of the prosecution were these: The corporate appellant, Dania Supply Company, doing a lumber business, thought that thefts of lumber were being committed by unknown persons, and in the spring of 1947 it employed the appellant Williams, who headed a detective agency, to work on the case. Williams had working with him the appellants Bombaci and Perry, and also one Giroux, whom he placed on Dania Supply Company's payroll as its employee in the lumber yards to spy on other employees. Yuhas, an office employee of Dania Supply Company, though not an officer, was present during beatings and abuses testified about. Appellant Ford was and is a policeman of the City of Miami, Florida, and was at the request of the County Solicitor for an officer, directed by the Chief of Police to assist in the investigation. Ford was present at some of the beatings, but neither he, nor Yuhas nor Perry did any violence, and according to some of the witnesses for the prosecution remonstrated against it. He did at some time during the proceedings arrest the persons beaten and did take them all except one to the jail and "book" them, and they were kept in jail from Friday night till Monday afternoon, when they were released on bond. It does not appear whether they were ever prosecuted. Since the arrests apparently were based on written confessions extorted from them and repudiated on their release, we assume there was no prosecution. Williams was the head and front of the misconduct, his associates calling him "Chief". He directed what was done and he and Bombaci delivered the blows. Four employees of the corporation were, one by one over a period of three days, brought, not under arrest, into a small building on the corporation's premises, Yuhas being present, interrogated as to any theft, and each denying participation in or knowledge of any, each separately was cursed, threatened, kicked or beaten, required to face a brilliant light and questioned for hours, till in exhaustion each signed what was asked of him, and save one, each was arrested and jailed as above stated. The matter was reported to federal authorities and an indictment found in eight counts, four under Criminal Code Sec. 20, 18 U.S.C.A. Sec. 52 [now § 242], charging deprivation of his rights under the Fourteenth Amendment as to each of the four beaten persons, and four counts under Sec. 19, 18 U.S.C.A. Sec. 51, [now § 241], charging conspiracy as to each such person's rights. Giroux, the spy, pleaded guilty, turned State's evidence, and received a suspended sentence. The corporation not having been included in this indictment, another similar indictment was found, omitting Giroux and including the corporation as a defendant. This went to trial, and the jury convicted Williams on the counts under Sec. 20, but acquitted the other defendants; and made a mistrial on the counts under Sec. 19 which charged a conspiracy. The defendants (except the corporation) had testified in their own behalf, and they were indicted for perjury. A new indictment was also found, being that now before us, which has four counts under Sec. 19, substantially like the four counts on which the mistrial occurred. On

this last indictment each defendant was convicted and sentenced, none of them testifying, and Williams, Bombaci, Perry and Ford appeal.

1. The indictment in each count charges that the defendants conspired to injure, oppress, threaten and intimidate a named person in the free exercise and enjoyment of rights and privilges secured to him by the Fourteenth Amendment of the Constitution, towit, the right not to be deprived of liberty without due process of law; the right to be secure in his person while in the custody of the State of Florida; and to be immune from illegal assault and battery while in the custody of persons acting under color of the laws of Florida, by persons exercising the authority of the State of Florida; and the right to be tried and punished, if guilty, by due process of law under the laws of Florida. Ford, Williams and Perry were alleged to have, and to have conspired to use, authority under the State of Florida. Details were alleged as to intended assaults, beatings and torture to get confessions, or testimony against others, concerning thefts from Dania Supply Company.

■ The indictment follows the statute in its generalities, and is sufficient in its specifics to be a good criminal pleading, and if it fails to allege a crime it is because the statute fails validly to create such a one. The failure lies in the application of the statute to the provision of the Fourteenth Amendment, "Nor shall any State deprive any person of life, liberty, or property, without due process of law", because of the extreme vagueness of the quoted clause. Reference is made to the discussions of a similar question touching Sec. 20 in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330, wherein by a closely divided court that statute was upheld because it provided that "wilful" violations only were to be crimes, and that meant that the accused, exercising the power of the State, not only deprived another of a federally secured right, but knew it was such, and wilfully flouted the Constitution and laws of the United States. This indictment does not charge these defendants with "wil-

fulness", nor does the statute mention it, and the judge refused to give the jury on request charges that "wilfulness" was a necessary element of the case.

■ 2. The Congress and the federal court are themselves faced here with the provision of the Fifth Amendment that "No person shall * * * be deprived of life, liberty, or property, without due process of law", and it is found right in the midst of provisions in the Fifth and Sixth Amendments about federal prosecutions for crime. It is well understood that "due process" applies not only to court procedure, but also to legislation, especially in criminal matters. There are no common law federal crimes, but all are created by statute, though common law words in the statute may take their intended meaning from the common law. Not only must the accusation inform the accused for what he is to be tried, but due process requires that the statute must inform the citizen in advance by a reasonably ascertainable standard what the crime shall be. A judge may not establish the standard, save by reasonable interpretation, after the deed is done, for that is in substance to give the statute life *ex post facto,* which the Constitution forbids also. All this we understood to be admitted by all the justices in the opinions in the Screws case. The word "wilful" in Sec. 20 was held by the majority to mean that the accused knew that the federal right existed and intentionally and purposely violated it, and his knowledge and wilfulness made him a criminal. This court, so understanding, held in Pullen v. United States, 5 Cir., 164 F.2d 756, that the word wilful, or its equivalent, was indispensable in an indictment under Sec. 20.

■ Sec. 19 differs much from Sec. 20, though both have to do with federally secured rights. Sec. 20 creates a misdemeanor offense; it speaks of color of law, and of "inhabitant of any State", and of discrimination in punishment on account of alienage or color or race. It punishes acts. Sec. 19 punishes only conspiracy; it makes no reference to Sec. 20, or to color of law, or to State, or to race or color; it adds also a separate and independent crime, the

act of two or more persons going in disguise on the highway or premises of another with the bad intent named; and the punishment is that of felony, and ineligibility to hold office. Wilfulness is not mentioned, nor is "intent" in the defining of the crime of conspiracy. It does not protect "inhabitants", but only "any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States". In the conspiracy provision, the Congress had in mind the federal rights and privileges which appertain to citizens as such and not the general rights extended to all persons by the clause of the Fourteenth Amendment. The *citizen's* rights are *specifically* stated in the Constitution and statutes, and in them may be found a standard of conduct. Such was the case in United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, when the right of the citizen to vote for a Congressman was involved. Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274, like the Classic case, involved the right of a citizen to vote; the Fifteenth and not the Fourteenth Amendment was rested upon. We are of opinion that this provision of Sec. 19 was not intended to include rights under the due process clause of the Fourteenth Amendment secured not to citizens only, but to everyone. The trouble about the vagueness of the Fourteenth Amendment as a standard of individual conduct is thus escaped. By eliminating the vague clause of the Fourteenth Amendment, which is addressed to the States alone, we escape also the question about the defendant's acting under State authority, or color of State law.[1]

We do not doubt the *power* of Congress to make it a crime of conspiracy to violate this clause of the Fourteenth Amendment.

Under Art. 1, Sec. 8, cl. 18, it has the power to protect by criminal sanctions any violation of federal rights, because necessary and proper to their preservation. The Fourteenth Amendment gives expressly power to enforce it by appropriate legislation. But Sec. 19 contains no reference to the Fourteenth Amendment, and we do not think the Amendment was contemplated in the provision for the protection of citizens in their rights.

But if we are wrong in this view, and the Fourteenth Amendment is contemplated by Sec. 19 as it is in Sec. 20, we are faced by the absence of the word "wilful" to help the vagueness. It would certainly be strange that in the same Act of 1870 the Congress should punish the *consummated* deprivation of rights by such acts as are here charged only when wilfully done, and only as a misdemeanor; but should punish as a ten year felony with deprivation of the power to hold federal office, the bare conspiring to do such a thing though not wilfully, and with nothing more in fact done.

■■■ 3. This conclusion should end this case, but since it may be overruled, we will express an opinion on the other questions before us. The word "conspire" indeed has some connotation of criminality, and there was in the plan alleged abundant criminality under the State law, ranging from assault and battery and false imprisonment to subornation of perjury, but we do not think the word has the force or effect of "wilfully" in Sec. 20. But if it has, the court erred in not giving the requests to charge that wilful deprivation of a known federal right was meant and was a necessary element of the conspiracy. The judge struck the word wilful everywhere. He did charge that a "specific in-

1. In the Classic case, 313 U.S. at pages 331 and 332, 61 S.Ct. at pages 1045, 1046, the dissenting justices forcefully stated the necessity that a federal statute creating a crime shall define what is to be punished, and they cited some of the cases. The majority thought that the right to vote effectively for Congressman, though in a primary election which would control the final election, was so clearly a constitutional right of a citizen that the broad words of the statute were definite enough to cover that case. The negative words of the due process clause of the Fourteenth Amendment do not create or mention citizens' rights, though for some purposes they may cover and protect them. They are insufficient to define a crime.

tent" to deprive of the constitutional rights alleged was necessary, which might be understood as meaning that the rights were known to be such. But the judge forestalled that understanding by charging at the request of the prosecution: "All that is required in order for a conspiracy to exist is that the defendants should have *acted in concert* and with an express or implied understanding to produce *a desired result.* * * * No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be deemed to have been established if there be concert of action, all the parties working together understandingly with a single purpose. * * * This does not mean that they would understand *that what they were doing would be a violation of law.* All that is necessary is that they should *understand what they were doing.* If what they thus understandingly cooperate to do is a violation of law, in this case a deprivation of Constitutional rights, then the conspiracy will have been established *even though the participants did not know that what they were doing would in fact be deemed to have been a deprivation or violation of any person's constitutional rights."* (Emphasis added.) This charge clearly states that knowledge that constitutional rights would be violated is not necessary to the establishment of this crime, but the conspiracy would be established if the parties cooperated in a common purpose and understood what they were doing. The court's attention was called to the inconsistency of these charges, but neither was withdrawn. The contradiction stood. The jury were not told that "conspire" means with wilful intent to deprive of known constitutional rights, which in the Screws case was held would justify making deprivation under this vague clause of the Fourteenth Amendment a crime under a general reference to rights secured by the Constitution and laws. The charge, and the refusals to charge, were erroneous, even if the indictment be sustainable.

4. As to the effect of the former acquittal of appellants, except Williams, on counts under Sec. 20 which ap-

pear to state the very same acts and transactions which the present indictment charges a conspiracy to perform, we are of opinion that there was no former jeopardy or former acquittal which would *bar a trial* of the conspiracy counts in the present indictment. A former jeopardy or an acquittal to be thus effective must be of the *same offense,* and it is well established that a conspiracy to do an unlawful act is not the same offense as the doing of it. No overt act is even required to complete a conspiracy under Sec. 19, but the crime is completed by the agreement. If the thing conspired to be done is not done it does not prevent conviction for the conspiracy, and a jury's finding that it was not done does not adjudicate that there was no agreement to do it. Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489; United States v. Rabinowich, 238 U.S. 78, 85, 35 S.Ct. 682, 59 L.Ed. 1211; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Woodman v. United States, 5 Cir., 30 F.2d 482. But the claim is also made here, that if there is no complete bar to this prosecution there is an *adjudication of a fact issue* involved in it, to-wit that these defendants did not commit or counsel or aid or abet the beating and other mistreatment of the four persons named in the counts of the indictments. Proof was offered that the transactions were the same and that the court in the former trial charged the jury that if the defendants did the things charged, or counseled or commanded or aided and abetted the doing of them, they were severally guilty. Only Williams was found guilty, and the others not guilty. While an adjudication in a civil case is in general of no force in a criminal prosecution, and vice versa, either as a complete bar by *res judicata* or as settling some issue actually tried, 50 C.J.S., Judgments, § 754(b), it is otherwise as to two criminal cases prosecuted by the same government against the same defendant or defendants, and the principles of adjudication are applied, and are not supplanted by the Constitution's provision against former jeopardy. 50 C. J.S., Judgments, § 754(a), citing Collins v. Loisel, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed.

1062; United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, 3 L.R.A. 516. A question or issue determined by a prior acquittal may not be relitigated in a criminal proceeding against the same person. It has been so held where one prosecution was for the substantive offense and the other for conspiracy to commit it. United States v. McConnell, D.C., 10 F.2d 977; United States v. Meyerson, D.C., 24 F.2d 855; United States v. Morse, D.C., 24 F.2d 1001; United States v. De Angelo, 3 Cir., 138 F.2d 466. Where, as here, conspiracy was the issue in one case and aiding and abetting in the other, the two issues were thought so nearly identical as to prevent a retrial: Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180. In the present case the direct evidence of conspiracy is slight, and absent as to some defendants, reliance being put on evidence that they were all present when the beatings and other things were done and did not try to stop them, but some did some things to help. The adjudication that only Williams did the wrong and the others did not counsel, aid or abet him in doing it, would be very helpful to these others in rebutting the inference that there was a previous conspiracy to do it. For this evidentiary purpose the record and the charge of the court to show what was tried before, were admissible and it was error to exclude them.

▌▌▌ 5. The indictment for perjury may have discouraged these defendants from testifying again and thus embarrassed their defense, but there was no cause therein for mistrial and no want of due process. The perjury indictment was not before the jury, and so far as appears, unknown to them. Any witness may be indicted for perjury if he swears falsely. He ought to fear nothing if he swears truthfully. The risk of unjust prosecution is present when any witness testifies. We think the pendency of a perjury indictment against a defendant does not prevent his being tried on some other charge, notwithstanding his former testimony would be pertinent in the present case. Mistrial for newspaper comments does not seem to have been required.[2] The same thing would not probably occur again, if there should be a new trial.

The judgments appealed from are reversed, and direction given to quash the indictment.

WALLER, Circuit Judge concurred in the foregoing and also filed the following opinion.

WALLER, Circuit Judge (specially concurring).

In Screws v. U. S., 325 U.S. 91, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495, 162 A.L.R. 1330, the Court, on the subject of the lack of specificity in Section 52 of Title 18, said: " * * * The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning."

In the present case, as in Spurr v. U. S., 174 U.S. 728, 19 S.Ct. 812, 815, 43 L.Ed. 1150, "The wrongful intent is the essence of the crime."

If I understand the teaching of the Screws case, it is that the word "willful" in the statute requires the showing of "an evil motive" in the deprivation of a federal right and that such is a constituent element of the crime, and that although one would be a criminal under the state law, he would not be such under Section 52 if his intent and purpose was unrelated to a deprivation of constitutional guaranties. It is made quite clear that the word "willful" in Section 52 persuaded the Court to say, in the Screws case, that: " * * * We repeat that the presence of a bad purpose or evil intent alone may not be sufficient. We do say that a requirement of a specific intent to deprive a person of a federal right

2. The comments related only to Dania Supply Company, who is not an appellant. It does not appear that any juror read them. In the charge the court twice instructed the jury to consider only the evidence in the case and nothing that they may have heard outside the court or read in the newspapers.

made definite by decision or other rule of law saves the Act from any charge of unconstitutionality on the grounds of vagueness."

In the Screws case, as here, the disregarded federal rights were under the Fourteenth Amendment.

Section 51, Title 18, with no mention of the word "willful" or of acts "under color of law of the state" or of discrimination because of "color, or race," or alienage, or of any "inhabitant", merely says that if two or more persons conspire to injure any *citizen* in the free exercise of any right *secured* to him by the Constitution or laws of the United States they shall be fined not more than $5,000.00, imprisoned not more than ten years, and thereafter be ineligible to any office or place of honor, profit, or trust created by the Constitution or laws of the United States.

The right not to be beaten by two or more persons can hardly be said to be a right or privilege that is "secured" to "the free exercise or enjoyment" of any citizen of the United States. The terms "free exercise" and "enjoyment" connote active use or positive utilization of privileges rather than a mere passive possession thereof. It seems grossly inapt to speak of a person as "having free exercise" of the privilege of being immune from assault and battery or as having the "free exercise or enjoyment" of the right to be tried and punished under the laws of Florida; or in freely exercising the right to be secure in his person while in the custody of the State of Florida. In short, one does not freely exercise or enjoy being in the custody of the State of Florida nor being tried and punished by due process of law. The citizen does, however, freely exercise or enjoy the privilege to vote, to assemble, to worship, to speak, or, that is, such privileges as are exercised or enjoyed by him out of his own activities.

Moreover, the right of a citizen not to be beaten is a right or privilege secured to him by the State law and not by federal law. Beating, standing alone, is insufficient to call the federal Constitution, statutes, or courts into operation.[1] It is only when someone willfully or intentionally acts under color or pretense of law of the State, in contravention of the Fourteenth Amendment, that the right not to be beaten becomes a federal right. In short, neither the beating of the victims by the four defendants in this case nor a conspiracy to beat them would have been a federal offense since the right or privilege of the victims was secured merely by state law, and it would become a federal offense only if and when the draftsman of the indictment could invoke a violated federal statute or provision of the Constitution. Furthermore, the only way a federal indictment under Section 51 can be predicated upon the violation of rights under the Fourteenth Amendment is by alleging that the defendants were acting under authority of the state, since the Fourteenth Amendment can have no application to individual action. Section 51 makes no reference to state law or authority.

These and other aspects of the case strongly suggest that Section 51, which deals only with rights or privileges of a citizen—as distinguished from an inhabitant—had reference only to interference with the free exercise by the citizen of exercisable rights pertaining to citizenship as distinguished from . federal rights of persons or inhabitants, and that Section 51 was intended to make illegal concerted action designed to prevent citizens from participating in politics or from exercising rights that are expressly secured by federal law to *citizens*.

Section 51 is far more vague and indefinite than Section 52, and under the Screws case all that saved Section 52 from the abyss of invalidity was the word "willful". It is clear that Section 52 had reference to deprivation of rights of inhabitants—even though aliens—under the Fourteenth Amendment by its use of the

---

1. "* * * The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States." Screws v. U. S. supra, 325 U. S. at page 108, 65 S.Ct. at page 1039.

phrase "under color of any law, statute, ordinance, regulation, or custom". Moreover, Section 52 prevents the deprivation not only of rights "secured" but "protected" by the Constitution and laws of the United States, while Section 51 does not embrace rights *protected* by the Constitution and laws. The rights or privileges embraced in Section 51 are only those which are *secured* to the citizen by the Constitution and laws of the United States. The wording of Section 51 is not in harmony with the purposes which the United States seeks in this case to have the statute accomplish.

In considering the question of necessity for the statute to prescribe that the act must be done willfully in order to avoid the charge of lack of specificity, it should be noted that the word "conspire" does not always carry the connotation of willfulness. Conspiracy is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. Pettibone v. U. S., 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419. The conspiracy here can only be of the latter type or, that is, a conspiracy having a lawful purpose to be accomplished by unlawful or criminal means. Certainly, it was not unlawful for the defendants to agree to investigate the thieveries, but it was unlawful, under the laws of the state, to assault, beat, and kick those held in custody for investigation. The thing that was unlawful, or that was willful, was not the agreement to investigate stealing but the method utilized in making the investigation and in seeking to extort confessions. The defect in Section 51, as same must be applied to these defendants, is that it makes criminal any agreement, lawful or otherwise, which results, by design or otherwise, in injuring, oppressing, etc., a citizen in the free exercise or enjoyment of a right or privilege secured by federal law. As in the Screws case a conscious purpose to do wrong was insufficient. Since the agreement to investigate was lawful, there must have been an intention, a willful purpose, to injure or oppress, which the word "conspire" would neither connote nor distinguish.

Suppose that A, in good faith, enters into an agreement with B and C for the doing of a lawful thing, but that B and C, without the knowledge or intention of A, do the lawful thing in an unlawful manner with resultant injury to D and E. Not only should A not be convicted of a felony, but such a conspiracy could not impute willfulness to A.

In defining the crime of conspiracy to do an act which had been made criminal by federal statute the use of the word "willfully" or "unlawfully" would not be required because the required specificity would be found in the statute defining the crime. For instance, in defining a conspiracy to rob a Post Office, it would not be necessary to state "if two or more persons *willfully* conspire to rob the Post Office," for robbery of a Post Office is a federal offense already defined by statute. But should a statute provide that if two or more persons conspire to sing the Doxology during church services without providing that the singing must be done willfully or with the intent to disturb public worship, such a statute, no doubt, would be invalid. If two or more policemen, in investigating a crime, should mistakenly arrest a citizen and hold him in jail for a reasonable time pending investigation, they would be liable, under Section 51, as written, to indictment, imprisonment for ten years, a fine of $10,000, and disbarment from holding any office or position of trust unless the statute required it to be alleged and proven that their acts were willful or in violation of a definite statute.

It will be noted that the first part of Section 51 providing against injuring, oppressing, threatening, or intimidating a citizen in the exercise of a federal right requires no overt act on the part of any conspirator. This is the phase of the statute involved here, and under it could not the Chief of Police of Miami, who merely aided the investigation by detailing Ford, a policeman, to assist, be also found guilty? He did nothing illegal. He merely attempted to aid in apprehending criminals, as was his duty. If conspiring without willfulness

and without the commission of an overt act is an offense under Section 51, that officer, who had no part in the beatings and no knowledge whatsoever of the occurrence of anything wrong, would also be guilty of a felony under the statute.

At the present time, according to the newspapers, a drive is being made by law enforcement officers of Florida, in cooperation, to prevent the dissemination to bookies of daily racing data in violation of a state statute and in detriment to the collection of the state revenue. If those who disseminate such information were to be arrested and placed in jail, and later held to have been in the exercise of their right of the freedom of the press, would not these officers attempting to enforce the law in a lawful manner be within the condemnation of Section 51?

Nothing need be added to what was said in the majority opinion about the necessity of defining a crime in order that one may know if and when he is violating the law. The purpose of this opinion is chiefly to present the view that the word "conspire" does not—as applied to the facts in the present case, at least—connote willfulness and that the rule of strict construction of criminal statutes applies to supplying connotations not justified by the language or the sense of the Act.

Our Court, speaking through this writer, has in Crews v. U. S., 5 Cir., 160 F.2d 746, Pullen v. U. S., 5 Cir., 164 F.2d 756, and Williams v. U. S., 5 Cir., 179 F.2d 656, which were all cases under Section 52, followed the teaching of the Supreme Court in the Screws case that in the absence of the element of willfulness in the deprivation of a right under the Fourteenth Amendment there can be no ascertainable standard of guilt, and I can perceive no reason why that doctrine should not be applied with equal force to conspiracies under Section 51 based upon deprivation of the free exercise by a citizen of rights arising out of the Fourteenth Amendment, which are often vague and obscure to laymen and difficult of discernment by judges.

I do not think that Section 51 is unconstitutional in situations where the conspiracy is one having the purpose to violate a federal statute containing a definition of the elements of the offense to be accomplished. I do not think that part of the Act relative to two or more persons going in disguise on the highway with intent to prevent the citizen in the free exercise or enjoyment of his rights would be violative of the Constitution for in such instances the statute makes intent an element of the crime, but I am unable to escape the conclusion that to make Section 51 apply, regardless of intent, to an interference with rights under the Fourteenth Amendment, that sometimes cannot be determined until the end of the trial, would be as great a deprivation of the constitutional rights as that sought to be punished in the present case.

HOLMES, Circuit Judge (dissenting).

We should not, I think, read the word *willfully* into the conspiracy statute on civil rights before the word *conspire,* as indicated in the majority opinion. The Congress did not put it there, and we should not undertake to do so by interpretation. The word was not added to the substantive offense until 1909, although the original act was approved in 1866. It was said that this addition was to make the section "less severe." 325 U.S. 100, 65 S.Ct. 1035, 42 Cong.Rec. 60 Cong., 2nd Session, p. 3599.

There are several conspiracy statutes in the new Criminal Code, 18 U.S.C.A. §§ 241, 286, 371, 372, 2271, and 2384, and only in Section 2271 do we find the word so modified, the language used being "whoever * * * willfully and corruptly conspires," etc. Thus, apparently, there was legislative discrimination in the employment of adverbs to modify this verb. To conspire, as used in Section 51, 18 U.S.C.A., Sec. 241 of the new code, means to enter into a conspiracy, as defined at common law, to do the things mentioned in said section. The word does not need to be modified, limited, or supplemented, because common-law words used in a federal statute ordinarily "take their intended meaning from the common law." Cf. Norris v. United States, 5 Cir., 152 F.2d 808, 811. Therefore, to conspire, as used in said sec-

tion and applicable here, means to enter into an agreement to injure, oppress, threaten, or intimidate, any citizen in the enjoyment of any right secured to him by the Constitution or laws of the United States. The unlawful agreement, that is, the conspiracy, is the gist of the crime defined in the statute; and, in order to render the offense complete, it is not necessary that any act should be done in furtherance of the unlawful agreement entered into between the parties. Each conspirator is criminally responsible for every substantive crime committed in furtherance of the conspiracy, whether specifically contemplated or not; Turner v. State, 97 Ala. 57, 12 So. 54; Boyd v. U. S., 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; but an acquittal of the substantive offense ordinarily does not bar a prosecution for conspiracy.

In Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330, the court was dealing with an indictment for the substantive offense, under what is now Section 242 of the new Criminal Code, and it admittedly strained to uphold the constitutionality of the statute, because, it said, 325 U.S. at page 100, 65 S. Ct. at page 1035: "We hesitate to say that when Congress sought to enforce the Fourteenth Amendment in this fashion it did a vain thing. We hesitate to conclude that for 80 years this effort of Congress, renewed several times, to protect the important rights of the individual guaranteed by the Fourteenth Amendment has been an idle gesture. Yet if the Act falls by reason of vagueness so far as due process of law is concerned, there would seem to be a similar lack of specificity when the privileges and immunities clause (Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L. Ed. 590, 125 A.L.R. 1383) and the equal protection clause (Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L. Ed. 1559) of the Fourteenth Amendment are involved. Only if no construction can save the Act from this claim of unconstitutionality are we willing to reach that re-

sult. We do not reach it, for we are of the view that if § 20 is confined more narrowly than the lower courts confined it, it can be preserved as one of the sanctions to the great rights which the Fourteenth Amendment was designed to secure."

There is no necessity for the conspiracy feature of this legislation, on constitutional grounds, to be more narrowly confined than is indicated by the language used in the statute. The Congress itself has made a distinction between the substantive offense and the crime of conspiracy by adding the word *willfully* as an ingredient of the substantive offense and by failing to make such addition to the essential elements composing the offense of conspiracy. The reason for the legislative distinction may be found in the differences inhering in the two offenses. One who enters into a criminal conspiracy to injure, oppress, threaten, or intimidate, any citizen in the enjoyment of a civil right does not need any legislative warning other than that of the statute itself, which is specific enough to cover any such right that is embraced in the agreement. Statutory specificity is essential to give due notice that an act has been made criminal before it is done; specificity in criminal prosecutions is required to inform the accused of the nature and cause of the accusation against him, so that he may adequately prepare his defense, and plead his acquittal or conviction on another trial for the same offense. More than this is not constitutionally required.

More particularity is sometimes required in indictments than in statutes; that is, less specificity is required in legislation, in order to warn the public to refrain from doing an interdicted act, than is necessary in an indictment in order to inform the defendant of the nature and cause of the accusation against him. For instance, ordinarily in an indictment it is sufficient to charge an offense in the words of the statute,[1] but this is not true unless the words of the statute set forth all the essential elements of the offense; and the fact that the statute, read in the light of the com-

---

1. Ledbetter v. United States, 170 U.S. 606, 611–612, 18 S.Ct. 774, 42 L.Ed. 1162; Sutton v. United States, 5 Cir., 157 F.2d 661, 663.

mon law, enables the court to infer the intent of the Congress does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent. See U. S. v. Carll, 105 U.S. 611, at page 613, 26 L.Ed. 1135, in which the court said:

"The language of the statute on which this indictment is founded includes the case of every person who, with intent to defraud, utters any forged obligation of the United States. But the offense at which it is aimed is similar to the common-law offense of uttering a forged or counterfeit bill. In this case, as in that, knowledge that the instrument is forged and counterfeited is essential to make out the crime; and an uttering, with intent to defraud, of an instrument in fact counterfeit, but supposed by the defendant to be genuine, though within the words of the statute, would not be within its meaning and object.

"This indictment, by omitting the allegation contained in the indictment in United States v. Howell (11 Wall. 432 [20 L.Ed. 195]), and in all approved precedents, that the defendant knew the instrument which he uttered to be false, forged, and counterfeit, fails to charge him with any crime. The omission is of matter of substance, and not a 'defect or imperfection in matter of form only,' within the meaning of Sec. 1025 of the Revised Statutes. By the settled rules of criminal pleading, and the authorities above cited, therefore, the question of the sufficiency of the indictment must be answered in the negative."

The principle thus announced has been summed up as follows: "Legislation may proceed by implication, but good pleading cannot." [2] The attack in the instant case is on the legislation, not on the pleading. There is no serious question here about the validity of the indictment if the applicable legislation is constitutional. The crime charged in the indictment, in substance, is that the appellants, acting under color of the laws of Florida, conspired to injure certain citizens of the United States in the free exercise and enjoyment of the rights and privileges secured to each of them by the 14th Amendment, which are particularly alleged to be the right not to be deprived of their liberty, and the right not to be subjected to punishment, without due process of law; also the right not to be compelled to testify against themselves or to be subjected to illegal coercion to testify against others. The details of the conspiracy are fully alleged, and the only real constitutional question is whether or not the act itself is invalid for vagueness or uncertainty.

It is unnecessary for me to amplify my views, owing to the elaborate discussion of kindred legislation in the Screws case, wherein four opinions were written but a majority of the court never concurred entirely in any one of them. An analysis of the four opinions reveals that three of the Justices dissented; two were in favor of affirming the judgment outright (although one of them voted for reversal in order to dispose of the case); and four were unwilling to hold the act unconstitutional if its scope was narrowly confined by interpretation. Thus six upheld the constitutionality of the act as construed in the opinion of Mr. Justice Douglas. Three dissented outright, saying that [325 U.S. 91, 65 S.Ct. 1063] "this shapeless and all-embracing statute can serve as a dangerous instrument of political intimidation and coercion in the hands of those so inclined." Since a majority of the Supreme Court upheld the constitutionality of the statute before them in the Screws case, *a fortiori,* the constitutionality of Section 241 should be upheld in this case.

The conviction under review on this appeal is for conspiracy only. The courts have found it difficult to frame an accurate and complete definition of the common-law crime of conspiracy, it being suggested by eminent legal writers that perhaps it cannot be done.[3] Necessarily it is equally difficult, and perhaps impossible, to frame a statutory definition sufficiently accurate to include all agreements that are punishable as conspiracies, and at the same time

---

2. Grimsley v. United States, 5 Cir., 50 F.2d 509, 511.

3. Clark & Marshall's Law of Crimes, 2 Ed., p. 194; 8 Cyc. 620.

to avoid including some that are not punishable as such. Let us bear in mind, however, that the law does not punish mere intention on the part of anyone. There must be an unlawful agreement or combination to accomplish, by concerted action, some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal by unlawful means. In many of the states, as well as at common law, the crime of conspiracy is defined in the most general terms.[4] Such statutes are not void for vagueness or uncertainty, provided the language used is sufficient to give warning to all persons to refrain from committing the kind or class of conspiracy that is within the letter and spirit of the legislative definition. Where the intention of the Congress is clear from the language of the statute, the indictment must expressly allege every material ingredient of the offense even though the statute has included some element only by implication.

Under our dual form of state and national government, the same act may be a crime against two sovereignties. Therefore, conspiring to deprive a citizen of the United States of his life or liberty without due process of law may be punishable as one crime against the United States and as another crime against the State in which the deed is done. Punishment may be inflicted by either sovereignty that has custody of the defendant. To steal property in interstate commerce may be, and generally is, a crime against both a state and the United States; the same is true as to robbery of an interstate shipment, and numerous other crimes.

Since Section 241 is sufficiently definite to warn the public to refrain from entering into conspiracies against citizens of the United States of the class defined therein; and since the indictment here is for a conspiracy of the prohibited class, and is sufficient to inform the defendants of the

nature and cause of the accusation against them, and the record is otherwise free from reversible error, I dissent from the judgment of reversal.

---

4. See Miss.Code of 1942, Vol. 2, Sec. 2056, in which one definition is as follows: "If two or more persons conspire * * * to commit a crime * * * each of them, shall be guilty of a misdemeanor".