## WILLIAMS v. UNITED STATES.
### No. 12711.

United States Court of Appeals
Fifth Circuit.
Jan. 10, 1950.

---

A. C. Dressler, Miami, Fla., Bart A. Riley, Miami, Fla., for appellant.

Leo Meltzer, Sp. Asst. to Atty. Gen., Fred Botts, Asst. U. S. Atty., Miami, Fla., Herbert S. Phillips, U. S. Atty., Tampa, Fla., for appellee.

Before HOLMES, WALLER, and SIBLEY, Circuit Judges.

WALLER, Circuit Judge.

This case is another instance where in applying the third degree in an endeavor to unearth a crime a more reprehensible crime was thereby committed.

The appellant, Williams, a private detective, was indicted, along with Perry, Bombaci, Ford, Yuhas, and Lindsley Lumber Co., an alleged corporation, in four counts under Section 52 [now § 242], Title 18, U.S.C.A. Section 20, U. S. Criminal Code, for willfully depriving four persons (Purnell, Robinson, Sturniolo, and Priest) of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States, and also in four counts, under Section 51 [now § 241], Title 18 U.S.C.A., Section 19, U. S. Criminal Code, for conspiring to injure, oppress, or interfere with the same four individuals in the exercise of rights and privileges under the Constitution and laws of the United States. There was a mistrial of all of the defendants under the four conspiracy counts under Section 51. There was a conviction of the appellant, Williams, on each of the four counts charging the substantive offenses under Section 52, but the other defendants were acquitted under those counts. Later there was a retrial of the four defendants under a revised indictment on the conspiracy counts, which resulted in all four being convicted, from which an appeal was also taken to this Court. See Williams et al. v. U. S., 5 Cir., 179 F.2d 644, for more complete details of the facts common to both cases.

The appeal which we are here considering is by Williams from his conviction and sentence under the four substantive counts under Section 52 of Title 18.[1] The indictment in the present case charged, in Count 2, that the appellant, together with de-

---

1. Section 52 of Title 18 U.S.C.A., reads: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

fendants Perry and Bombaci, were special police officers under written authority from the City of Miami, Florida, and acting under the laws of the State and ordinances and regulations of the municipality, who with Charles R. Ford, a police officer of the City of Miami, acting under the laws of the State, together with Andrew J. Yuhas and the Lindsley Lumber Company, did willfully, and under color of the laws, statutes, ordinances, regulations, and customs of the State of Florida and of the municipality of Miami, subject, and cause to be subjected, Frank J. Purnell, Jr., an inhabitant of the State of Florida, to deprivations of the rights, privileges, and immunities secured to him and protected by the Fourteenth Amendment to the Constitution of the United States, to wit, "the right and privilege not to be deprived of liberty without due process of law, the right and privilege to be secure in his person while in the custody of the State of Florida, the right and privilege not to be subjected to punishment without due process of law, the right and privilege to be immune, while in the custody of persons acting under color of the laws of the State of Florida, from illegal assault and battery by any person exercising the authority of said State, and the right and privilege to be tried by due process of law and if found guilty to be sentenced and punished in accordance with the laws of the State of Florida; that is to say, on or about the 28th day of March, 1947, the defendants arrested and detained and caused to be arrested and detained the said Frank J. Purnell, Jr., and brought and caused him to be brought to and into a certain building sometimes called a shack on the premises of the Lindsley Lumber Co., at or near 3810 N. W. 17th Avenue, in said City of Miami, Florida, and did there detain the said Frank J. Purnell, Jr., and while he was so detained the defendants did then and there illegally strike, bruise, batter, beat, assault and torture the said Frank J. Purnell, Jr., in order illegally to coerce and force the said Frank J. Purnell, Jr., to make an admission and confession of his guilt in connection with the alleged theft of personal property, alleged to be the property of said Lindsley Lumber Co., and in order illegally to coerce and force the said Frank J. Purnell, Jr., to name and accuse other persons as participants in alleged thefts of personal property, alleged to be the property of the said Lindsley Lumber Co., and for the purpose of imposing illegal summary punishment upon the said Frank J. Purnell, Jr."

The other three substantive counts involved in this appeal were identical except that in the other substantive counts 4, 6, and 8, Chester M. Robinson, Henry W. Priest, and John P. Sturniolo were successively and respectively named as the victims instead of Frank J. Purnell, Jr.

There is substantial evidence in this case to the effect that Williams, the owner and operator of a private detective agency in Miami, Florida, was employed by the Dania Supply Company, doing business as Lindsley Lumber Co., to investigate thefts from it of lumber and material. Williams had a special police card issued by the Director of Public Safety of the City of Miami. He received no compensation as such special police officer and his official status is not very definitely shown by this record. Section 24(a) of the charter of the City of Miami—which is more of a negation than a definition—provides: "No person, except as otherwise provided by general law or this charter, shall act as special police or special detective except upon written authority from the director of public safety. Such authority, when conferred, shall be exercised only under the direction and control of the chief of police and for a time specified in the appointment."

It is argued that the card issued to Williams was somewhat in the nature of a courtesy card and gave no authority to him to act as a policeman except under the explicit direction and control of the Chief of Police. It is not disputed, however, that Ford was a regular policeman of the City and was detailed to assist the detective and the Supply Company in investigating the stealing. It is also shown that this police officer was present during the beatings and maltreatment of the suspects, although it does not appear that he actually participated in the assaults or that

he personally administered any beatings to these suspects. Purnell, one of the victims, testified that Williams flashed a badge and stated that it was his identification, while Priest, another victim, testified that Williams informed him he was from the F. B. I. However, the Government undertakes to support its allegation that Williams was acting under color of law by its showing that he was a special policeman of the City of Miami, pursuant to the charter of the City, and not as a federal officer.

There is ample evidence to show that Williams brought the suspects, Priest, Sturniolo, Purnell, and Robinson—singly— into a paint shack on the grounds of the Supply Company and there, in the presence of Ford, the city policeman, aided and abetted by Bombaci, Yuhas, and Perry, beat, struck, threatened, intimidated, and otherwise maltreated them so as to provoke admissions or confessions which justified, in the opinion of Williams, the arrest of three out of four suspects. The fourth was released upon the promise that he would become a spy and make reports on others. The records of the Miami Police Department show Priest as having been "arrested by J. Williams and J. Avery". The record does not show that either of the victims was ever brought to trial for the alleged thefts.

A sentence of one year was imposed on Williams under each of the four substantive counts.

Appellant contends: First, that the Fourteenth Amendment, as implemented by Section 20 of the Criminal Code, Section 52, Title 18 U.S.C.A., was not intended to bring before the Federal Courts unlawful acts of individuals or state officers unless such acts were authorized by the State; and, Second, that the Court erred in allowing the Government at the close of its case to amend the indictment by striking out the name of "Lindsley Lumber Co., a corporation" and inserting in lieu thereof the words "Dania Supply Company, a corporation, doing business as Lindsley Lumber Co."

We shall dispose of the latter, and easier, of the two propositions first.

In any indictment it is required that the accused be definitely informed as to the charges against him so that he may be able to present his defense and so as not to be taken by surprise by evidence offered at the trial, and also that the indictment be sufficiently definite that he shall not be again subjected to another prosecution for the same offense. If an indictment complies with these requirements, it is sufficient, and ordinarily an indictment may be amended provided that the amendment does not violate the above requirements, and provided that any evidence defendant had before the amendment would be equally available to him after the amendment.

If a defendant is in no sense misled, put to added burdens, or otherwise prejudiced, by an amendment, such an amendment ought to be considered and treated as an amendment of form and not of substance, and, therefore, allowable, even though unauthorized by the grand jury. It is noted that "Lindsley Lumber Co., a corporation", was named as a defendant in the indictment, and that Dania Supply Company, a corporation, was not. Insofar, therefore, as the Dania Supply Company, a corporation, is concerned, the amendment bringing it in as a defendant and as doing business as the Lindsley Lumber Co. was a matter of substance and not of form only. However, Dania Supply Company was not convicted and is not here complaining, and we fail to discern how such an amendment, showing only the capacity in which the business of Lindsley Lumber Co. was being conducted, could have in any wise been prejudicial to the appellant, charged with depriving certain individuals of a federal or constitutional right. The gist of the case was whether or not Williams, acting under color of law, willfully subjected, or caused to be subjected, inhabitants of the State of Florida to deprivation of rights secured or protected by the Constitution and laws of the United States. The question of whether Williams was investigating alleged thefts from, and on the premises of, the Dania Supply Company, a corporation, doing business as the Lindsley Lumber Co., instead

of investigating thefts of property of the Lindsley Lumber Co., is not a matter of substance and the amendment of the indictment by inserting the name "Dania Supply Company, a corporation, doing business as Lindsley Lumber Co.", in lieu of the words "Lindsley Lumber Co., a corporation", was without the slightest prejudice to the appellant.

In Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 419, 76 L.Ed. 861, it was said: "The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded." See also U. S. v. Fawcett, 3 Cir., 115 F.2d 764, 132 A.L.R. 404; U. S. v. Denny, 7 Cir., 165 F.2d 668, certiorari denied Denny v. United States, 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1227, Rule 52 and Rule 7(e) and (f), Federal Rules of Criminal Procedure, 18 U.S.C.A.

We conclude that the allowance of the amendment without the same being authorized by the grand jury, even if error, was harmless and did not constitute reversible error insofar as appellant was concerned.

■ The other contention of appellant, that Section 52 did not give the Federal Courts jurisdiction of acts of individuals in such situations where their deeds were contrary to the laws of the State, we think has been amply discussed and definitely decided, contrary to the contention of the appellant, in the following cases by this Court: Screws v. U. S., 5 Cir., 140 F.2d 662; Crews v. U. S., 5 Cir., 160 F.2d 746; Pullen v. U. S., 5 Cir., 164 F.2d 756; and by the Supreme Court of the United States in U. S. v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, and Screws v. U. S., 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330.

In Screws v. U. S., supra, we said [140 F.2d 665]: "The deprivation of liberty or property or life under valid State law constitutes no offense under the act, but it is a deprivation of a constitutional right under a mere *pretense or color of law* by one pretending to act under the authority of the State that calls the section into operation. In the instant case there is evidence to the effect that the alleged warrant of arrest was prepared by the sheriff and was a spurious afterthought." (Emphasis supplied.)

This conclusion seems to have been approved by the Supreme Court in its reversal, for other reasons, of our judgment in the Screws case, as revealed by the following statement by Mr. Justice Douglas [325 U.S. 91, 65 S.Ct. 1040]: "It is clear that under 'color' of law means under 'pretense' of law. * * * If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea."

In McCain v. Des Moines, 174 U.S. 168, 19 S.Ct. 644, 646, 43 L.Ed. 936, there is this definition of "color of law": " 'Color of law' does not mean actual law. 'Color,' as a modifier, in legal parlance, means 'appearance as distinguished from reality.' Color of law means 'mere semblance of legal right.' "

In the present case the policeman, Ford, although not in uniform, was present in an official capacity as a policeman of the City of Miami, acting under the authority of the City, and giving, under our holding in Crews v. U. S., supra, official color to the investigation. In that case we said [160 F.2d 750]: "An officer of the law should not be permitted to divest himself of his official authority in actions taken by him wherein he acts, or purports, or pretends, to act pursuant to his authority, and where one, known by another to be an officer, takes the other into custody in a manner which appears on its face to be in the exercise of authority of law, without making to the other any disclosure to the contrary, such officer thereby justifies the conclusion that he was acting under color of law in making such an arrest."

Ford was sent to the scene by a superior police officer of the City of Miami. Williams, the appellant, who personally committed most of the assaults and did most of the beating, did so in the presence of this duly constituted, or lawful, officer, who, at least, lent color of law to the occasion.

Appellant flashed some sort of a badge which clearly justified an inference that he was desirous of creating the impression to the exhibitee that he was acting under the badge of law and as an officer of some sort.

We are of the opinion that in the absence of any showing whatsoever that the appellant made known to the victims that the inquisition was personal or unofficial, rather than under the law, and in view of the possession of a special policeman's card by Williams, his flashing of a badge as a symbol of authority, his arrest of one of the victims, together with the presence of the policeman, Ford, during all of the atrocities in the paint shack, the jury was justified in concluding that the appellant was either acting under color of law or pretending so to act.

We think the indictment and trial were in conformity to the requirements of law as expressed in the Classic, Screws, and Pullen cases, and that there is abundant evidence to support the jury's finding that the appellant was guilty of the offenses charged in the four counts of the indictment upon which convictions were had.

The judgment is affirmed.