[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12728

_____

D.C. Docket No. 2:12-cr-00087-WKW-CSC-11

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM JAMES REESE,
ERIC ORLANDO REESE,
ROBERT MARSHALL,
a.k.a. Big Daddy,
WILLIE JEROME DAVIS,
a.k.a. Mobey,

Defendants - Appellants.

_____

No. 13-12986

_____

D.C. Docket No. 2:12-cr-00087-WKW-CSC-8

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

CLIFTON PETTUS,
a.k.a. Biscuit,

                                        Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Alabama
_____

(June 1, 2015)

Before MARCUS, ROSENBAUM and GINSBURG,[*] Circuit Judges.

PER CURIAM:

This appeal was considered on the record and the briefs and oral arguments

of the parties.  Although the issues presented occasion no need for a published

opinion, they have been accorded full consideration by the court.  Each of the

appellants in this case — William James Reese, Eric Orlando Reese, Robert

Marshall, Willie Jerome Davis, and Clifton Pettus — was indicted in the Middle

District of Alabama upon various drug-related charges, including conspiracy.

Individually and together, they raised nine separate issues on appeal.

---

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia,
sitting by designation.

2

First, the appellants argue the district court, following a "reverse *Batson* challenge" by the Government, inappropriately seated Juror 29 notwithstanding the defendants' collective peremptory strike, on the basis that defendants apparently lacked any reason for the strike aside from Juror 29's race.

Under *Batson v. Kentucky* and its progeny, neither prosecutors nor defendants may exercise their peremptory strikes in a racially discriminatory manner. *United States v. Walker*, 490 F.3d 1282, 1290 (11th Cir. 2007) (citing *Batson*, 476 U.S. 79 (1986)). This court "appl[ies] harmless error review to any misapplication of *Batson* that results in the seating of a juror who is otherwise qualified for juror service." *United States v. Williams*, 731 F.3d 1222, 1236 (11th Cir. 2013). An error is harmless if it does not "affect the substantial rights of the parties." *Id.*

Assuming without deciding that the district court erred in seating Juror 29, the error was nonetheless harmless. Nothing in the record indicates Juror 29 was biased or otherwise not qualified to serve. Therefore, Juror 29's inclusion in the jury did not affect the defendants' substantial rights. *See, e.g.*, *United States v. Bowles*, 751 F.3d 35, 39 (1st Cir. 2014); *Jimenez v. City of Chicago*, 732 F.3d 710, 715-16 (7th Cir. 2013).

Second, Pettus argues the district court erred in the amount of cocaine it attributed to him for the purpose of calculating his base offense level. In a

3

conspiracy case the Sentencing Guidelines specify that to determine a defendant's base offense level, a district court is to consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). "We review a district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes under the clearly erroneous standard." *United States v. Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000).

The district court found Pettus was an "integral component" of the drug distribution conspiracy at the heart of this case. In addition, the district court determined upon the basis of the evidence presented — including the size of the distribution network, Pettus's relationships with key persons in that network, and discussions apparently concerning a total of 24 kilograms of cocaine by one of those key persons and another conspirator — that "it would be reasonably foreseeable" by Pettus that large amounts of drugs were being distributed; in particular, it was reasonably foreseeable to him that at least 15 kilograms of cocaine were being distributed. Based upon that evidence, the district court's determination of the quantity of drugs attributable to Pettus for sentencing purposes was not clearly erroneous.

Third, E.O. Reese argues the district court improperly allowed William Ford to testify about the meaning of certain terms, used in a conversation between Davis

and E.O. Reese, as pertaining to drug dealing.  Ford was a long-time drug dealer who knew E.O. Reese, W.J. Reese, and Davis and who had spoken with Davis and E.O. Reese  about drug dealing on multiple occasions.

As we have previously observed, Federal Rule of Evidence 701 "allows a lay witness to offer opinions or inferences if they are '(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'"  *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011) (quoting Fed. R. Evid. 701).  This Circuit reviews a district court's rulings on the admissibility of testimony for abuse of discretion.  *United States v. Barsoum*, 763 F.3d 1321, 1338 (11th Cir. 2014).

According to Reese, "there was nothing [in the record] to indicate that ... Ford's opinions were rationally based on his perceptions."  On the contrary, Ford's testimony was based upon his years of experience as a drug dealer and as an associate of the conspirators.  Therefore, the district court did not clearly err in admitting Ford's testimony.  *See Jayyousi*, 657 F.3d at 1102-03 (admitting the testimony of a witness as to coded language, based upon the witness's familiarity with such language, notwithstanding that the witness did not participate in or observe the particular conversations about which he testified).

5

Fourth, E.O. Reese argues the district court inappropriately enhanced his sentence based upon facts not found by the jury.  The jury found E.O. Reese guilty of conspiracy to possess with the intent to distribute 500 grams or more of cocaine. He was not charged with any firearms violation, however, and the jury made no finding as to any such violation.  The district court increased E.O. Reese's sentence based upon both its determination that 5.5 kilograms of cocaine could be attributed to him and upon the nexus between the conspiracy and several firearms.  Reese argues those enhancements increased his sentence based upon facts not found by the jury, in violation of his right to trial by jury as explicated by the Supreme Court in *Alleyne v. United State*s, 133 S. Ct. 2151 (2013):

> [A]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt.

The Court also explained, however, *id.* at 2163:

> Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.

Consequently, we have since held "a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence — so long as its findings do not increase the statutory maximum [sentence] or [the statutory] minimum [sentence] authorized by facts determined in

6

a guilty plea or jury verdict." *United States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014).

Because E.O. Reese did not object to the sentencing enhancements on the basis of *Alleyne* when he was before the district court, we review those enhancements only for plain error. *See United States v. McKinley*, 732 F.3d 1291, 1295-96 (11th Cir. 2013) (per curiam). Under any standard of review, however, the enhancements did not violate E.O. Reese's right to trial by jury because they did not increase the statutory minimum sentence to be imposed or increase a statutory maximum for the offense charged.

Fifth, Marshall argues the evidence against him was insufficient to establish that he was guilty either of conspiracy to distribute cocaine or of using a cellular telephone to facilitate the conspiracy; the evidence, he says, established only that he engaged in buy-sell transactions.

"We review de novo a [d]istrict [c]ourt's denial of judgment of acquittal on sufficiency of evidence grounds, considering the evidence in the light most favorable to the Government, and drawing all reasonable inferences and credibility choices in the Government's favor." *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). The court is "obliged to affirm the convictions if a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014).

Conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846 requires proof of "1) an agreement ... between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." *Id.* "Because conspiracies are secretive by nature ... participation in the conspiracy may be proven entirely from circumstantial evidence." *United States v. White*, 663 F.3d 1207, 1214 (11th Cir. 2011) (citation omitted) (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility determinations in the Government's favor, there was sufficient evidence for a reasonable jury to convict Marshall.  Marshall's knowledge of and knowing participation in the conspiracy could reasonably be inferred from his repeated purchases from Rajneesh Dikka Daniels of Davis's cocaine and from his relationship with Tony Gardner, who could reasonably be construed as a middle man between Marshall and Bledson; it could also be inferred from his meeting with Bledson, the drug purchase associated with that meeting, and his subsequent telephone conversation with Bledson arranging for further transactions.  The jury was free to discount as unreliable Bledson's statement that Marshall was not a member of the conspiracy.  *See Reeves*, 742 F.3d at 500 (noting the jury is "free to discredit" testimony and even "to believe the opposite" of what is said).

8

A conviction for violation of 21 U.S.C. § 843(b) requires proof of "(1) knowing or intentional (2) use of a 'communication facility' (3) to facilitate the commission of a felony." *United States v. Barnes*, 681 F.2d 717, 723 (11th Cir. 1982). The same evidence from which a reasonable jury could conclude Marshall was involved in a conspiracy to distribute cocaine would allow that jury to conclude Marshall's telephone call with Bledson was intended to facilitate the conspiracy.

Sixth, Marshall argues the district court inappropriately allowed the Government to introduce, over his objection, evidence that he was convicted in 1999 of the sale of a controlled substance. Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act" may be used to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Before evidence of a prior criminal act may be admitted, however, the district court must determine, among other things, that "the probative value of the evidence" is not "substantially outweighed by its undue prejudice." *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995). "[T]emporal remoteness ... depreciates the probity of the extrinsic offense," but this Circuit has "refrained from adopting a bright-line rule with respect to temporal proximity." *United States v. Matthews*, 431 F.3d 1296, 1311-12 (11th Cir. 2005) (citation omitted) (internal quotation marks omitted).

9

Instead, we review a district court's decision to admit evidence of a prior offense

for abuse of discretion.  *See id.* at 1311-12 (noting the standard of review).

We have previously held evidence of more remote past acts to be admissible,

as in *United States v. Lampley*, where we held the district court did not abuse its

discretion in allowing the admission of evidence of acts that took place

approximately 15 years earlier.  68 F.3d 1296, 1300 (11th Cir. 1995).  The district

court did not treat *Lampley* as establishing a 15 year "litmus test" but rather heard

and weighed the arguments from both Marshall's counsel and the Government

with regard to the probity of the 1999 conviction and its potential for creating

undue prejudice.  *See Matthews*, 431 F.3d at 1311-12 (noting that "because

decisions as to impermissible remoteness are so fact-specific ... a generally

applicable litmus test would be of dubious value") (citation omitted) (internal

quotation marks omitted).  We conclude, therefore, the district court did not abuse

its discretion in admitting Marshall's prior conviction.

Seventh, Davis argues the district court erred in allowing the introduction of

wiretap evidence because the order authorizing the wiretap was not supported by

probable cause.  Clearly, an application for a wiretap must be supported by

probable cause.  *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990).

Evidence derived from the execution of a wiretap order not supported by probable

cause, however, may still be admitted unless "the magistrate abandoned his

detached and neutral role" or "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984) (allowing the possibility that evidence obtained from invalid search warrants may be admitted in such circumstances).

When this circuit reviews a district court's denial of a motion to suppress evidence, the district court's findings of fact are reviewed for clear error and its application of the law to those facts is reviewed de novo. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). In this case, the district court found various facts supporting "a fair probability" that the challenged wiretap would "lead to communications concerning drug trafficking." Even if those factual findings were clearly in error, however, Davis has introduced no evidence the warrant was obtained or executed in bad faith. To the contrary, as the district court noted, the affidavit offered by Special Agent Devin Whittle in support of the application for the wiretap order was based on the officer's reasonable conclusions in light of "the context supplied by other information lawfully obtained in the investigation at the time of the application and the benefit of Agent Whittle's experience." Therefore, the wiretap evidence was admissible.

Eighth, Davis argues the district court erred in allowing the introduction of physical evidence seized pursuant to a search warrant because the warrant was not

11

supported by probable cause. Again, however, Davis has failed to offer any evidence the warrant was obtained or executed in bad faith. Therefore, the physical evidence was admissible.

Finally, Davis adopted the argument — originally made by Marshall, but later withdrawn — that the district court impermissibly amended the indictment after the case was submitted to the jury. Counts 5, 11, 12, 13, and 20 of the indictment each alleged unlawful use of a communication facility in furtherance of a conspiracy, to wit, use of a cellular telephone with the number (851) 217-1961. The proof of guilt offered at trial, however, consisted of calls to or from the telephone number (815) 217-1961, which caused the jury to ask the court whether, in order to convict, it had to find the phone number used was identical to the phone number listed in the indictment. The district court then amended the indictment to conform it to the evidence.

"[A]n indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Russell v. United States*, 369 U.S. 749, 770 (1962). A pre-*Russell* case, still binding in this Circuit, states that, "[i]f a defendant is in no sense misled, put to added burdens, or otherwise prejudiced, by an amendment, such an amendment ought to be considered and treated as an amendment of form and not of substance, and, therefore, allowable, even though unauthorized by the grand jury." *Williams v. United States*, 179 F.2d

12

656, 659 (5th Cir. 1950).[*]  More recently, we have held that there is no impermissible amendment where the district court amends an indictment after the jury begins deliberating so long as the alteration merely corrects a scrivener's error (an error of form rather than one of substance). *United States v. Baldwin*, 774 F.3d 711, 724 (11th Cir. 2014).  Other circuits have done this as well. *See, e.g.*, *United States v. Neill*, 166 F.3d 943, 947 (9th Cir. 1999).  This is true even after a case has been submitted to the jury. *Id.* at 947-48.

In this case, the error was merely typographical, and did not affect either the prosecution or the defense of the charges against Davis.  Therefore, the amendment was permissible.

For the foregoing reasons, each of the appellants' contentions is rejected.

**AFFIRMED.**

---

[*] "In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), [the Eleventh Circuit] adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Matthews*, 431 F.3d at 1310 n.13.